**Paul GINSBURG, Plaintiff,**

v.

**Horace STERN and Patrick N. Bolsinger, Defendants.**

Civ. No. 12643.

United States District Court
W. D. Pennsylvania.

Oct. 26, 1954.

Paul Ginsburg, Pittsburgh, Pa., pro se.

Elder W. Marshall, Pittsburgh, Pa., for defendants.

GOURLEY, Chief Judge.

In conjunction with a motion to dismiss now pending before this court, the plaintiff has moved that Horace Stern be ordered to answer certain interrogatories pursuant to Federal Rules of Discovery.

The interrogatories are designed to develop evidence in support of plaintiff's allegations of an alleged conspiracy on the part of Horace Stern, Chief Justice of the Pennsylvania Supreme Court, and Patrick N. Bolsinger, Prothonotary of the Western District of the Supreme Court of Pennsylvania, to deprive plaintiff of rights and privileges secured by the Federal Constitution and laws of the United States, more particularly the statutes known as the Civil Rights Acts, as well as to obstruct and defeat the due course of justice with intent to deny to plaintiff the equal protection of the laws.

■■ For purpose of disposition of this motion, resolving as we must all factual issues in favor of the plaintiff, and with the consent of the contesting parties, it will be assumed that the per curiam order of Chief Justice Stern was entered on his own individual volition without consultation or consent of the other justices of said court, and the Prothonotary was directed by the Chief Justice of the Supreme Court of Pennsylvania not to file or docket said proceeding. Generally in the usual or common type of litigation, and without consideration of the merits of this proceeding, it would appear that said action and procedure followed was contrary to established rule and custom and would be violative of basic concepts of justice.

In view of the fact that all plaintiff's allegations are assumed to be true, for purposes of the said motion to dismiss, no useful purpose could be served at this time by answering interrogatories aimed at eliciting information which for all intents and purposes are now construed in a light most favorable to plaintiff.

It would, therefore, appear appropriate that plaintiff's motion to compel Horace Stern to answer said interrogatories be refused, without prejudice to revive the same in the event that future circumstances may so justify.

An appropriate Order is entered.

### On Motion to Dismiss

This action is by a Pittsburgh attorney against the Chief Justice of the Supreme Court of Pennsylvania and the Prothonotary of that court for its Western District, and premises jurisdiction in this court upon the Civil Rights Act, as amended, 42 U.S.C.A. §§ 1983, 1985, 1986.[1]

1. "1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

"1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties

* * * * *

"(2) * * * or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

"(3) * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

"§ 1986. Same; action for neglect to prevent

"Every person who, having knowledge

The matter comes before the court on defendants' motion to dismiss the action on the basis that the complaint states no cause of action upon which relief can be granted.

In considering a motion to dismiss, the complaint must be viewed in a light most favorable to the plaintiff, and should not be dismissed unless it appears to a certainty that plaintiff would not be entitled to relief under any state of facts which could be proved in support of the plaintiff's claim, and no matter how likely it may seem that the plaintiff would be unable to prove its case, it is entitled upon averring a claim to an opportunity to prove it. The truth of all facts well pleaded is admitted, including facts alleged on information and belief. Frederick Hart & Co., Inc., v. Recordgraph Corp., 3 Cir., 169 F.2d 580.

The complaint charges the defendants with having conspired to deprive him of rights and privileges secured by the Federal Constitution and laws of the United States, more particularly the statutes known as the Civil Rights Acts, as well as to obstruct and defeat the due course of justice with intent to deny to plaintiff the equal protection of the laws.

The defendants' conduct of which the plaintiff complains was their refusal to file of record in the office of said Prothonotary, with an assigned number, a certain petition of the plaintiff, addressed to the judges of the Pennsylvania Supreme Court, wherein the plaintiff sought disciplinary action against a judge of the Court of Common Pleas of Allegheny County, the fifteen members of the Committee on Offenses of the latter court, and four individual members of the bar of said court.

The basic allegations of the complaint are that Chief Justice Stern ordered that the petition be not filed; that the Prothonotary complied with said order, has not filed the petition of record or given it a docket number, and informed the plaintiff that the petition would be retained by him personally; and that the conduct of the defendants was conspiratorial and has deprived the plaintiff of his rights and privileges as a citizen of the United States and of Pennsylvania.

The present complaint discloses that the petition in question was presented under Rule 17 of the Pennsylvania Supreme Court;[2] that it was transmitted by the Prothonotary to the Chief Justice; and that thereafter it was returned to the Prothonotary with an order of the court endorsed thereon in longhand, as follows:

"Petition dismissed. Per Curiam. June 28, 1954."

For purpose of disposition of this motion, resolving as we must all factual issues in favor of the plaintiff and with the consent of the contesting parties, it will be assumed that the Per Curiam Order of Chief Justice Stern was entered

that any of the wrongs conspired to be done, and mentioned in section 47 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; * * *."

2. "Rule 17. * * * (d) Complaints against members of the bar of this court alleging misconduct, shall be made to the board; if made to the court, they may be forthwith certified to the board. If the matter is of sufficient importance to require further investigation, the complainant shall be directed to file a formal petition in paragraph form, setting forth the charges against the respondent. If the petition is sufficient, the respondent shall be required to file an answer, and thereafter the matter shall be referred to a committee of three members of the board. Testimony may be taken by any one or more of such committee; the hearing shall be private unless the respondent shall request that it be public, or unless the committee determine that it shall be public."

on his own individual violation without consultation or consent of the other justices of said court, and that the Prothonotary was directed by the Chief Justice of the Supreme Court of Pennsylvania not to file or docket said proceeding. Generally in the usual or common type of litigation, and without consideration of the merits of this proceeding, it would appear that said action and procedure followed was contrary to established rule and custom and would be violative of basic concepts of justice.

The instant complaint specifically charges that the matters complained of are directed against the defendants as having acted in their official capacities for the Supreme Court of Pennsylvania.

The principle, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and had never been denied in the courts of this country prior to the adoption of the Civil Rights Statutes in the United States.

■ It was considered essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. Said firmly embedded rule of law was considered not for the protection or benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. It was reasoned that a judge could not exercise his office if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him.

A defeated party to litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It was not in the public interests that such a suit should be maintained; and it was a fundamental principle of English and American jurisprudence that such an action could not be maintained. Yaselli v. Goff, 2 Cir., 12 F.2d 396, 399.

Prior to the Civil Rights Statutes, in our system of jurisprudence it, therefore, appeared a time-honored immunity of judges existed from civil liability for their official or judicial acts, no matter how erroneous, malicious or corrupt they may have been. Bradley v. Fisher, 13 Wall. 335, 349, 80 U.S. 335, 349, 20 L.Ed. 646; Papagianakis v. The Samos, 4 Cir., 186 F.2d 257; Tinkoff v. Holly, 7 Cir., 209 F.2d 527.

Civil Rights Statutes and Their Effect Upon the Judiciary

The question now posed before this court is whether or not such immunity continues in effect after the enactment of the Civil Rights Statutes.

As an aftermath of Civil War and national convulsion, the Civil Rights Statutes were forged by the great statesmen and lawyers of both Houses of Congress.

It must be considered whether these stalwart defenders of constitutional government intended to employ the Civil Rights Statutes as a bludgeon to strike asunder the fundamental and basic concept of judicial independence—which by and large feeds life blood to the arteries of the organism of free government.

The apparently sweeping and unqualified language of the old Civil Rights Act, 8 U.S.C.A. § 43 and more recently changed to 42 U.S.C.A. §§ 1983, 1985, 1986, as amended, seems to say that every person in official position, whether

executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses or exemptions, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they believed to be their official duty. Reading the language of the Act in its broadest sweep, it would seem to make no difference that the conduct of the defendants might not have been tortious at common law; for the Act, if read literally, creates a new federal tort, where all that has to be proved is that the offender as a result of his conduct under color of state law has in fact caused harm to the plaintiff by depriving him of rights secured by the Constitution of the United States and the Civil Rights Statutes.

Fortunately Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, has relieved us of the necessity of giving the Civil Rights Act such an awesome and unqualified interpretation. That case held that the broadly expressed terms of the Civil Rights Act could not have been intended to deprive state legislators of their pre-existing and well-established complete immunity from civil liability for official acts done within the sphere of legislative activity. Francis v. Crafts, 1 Cir., 203 F.2d 809, 811; Cobb v. City of Malden, 1 Cir., 202 F.2d 701.

I have given most thorough consideration to the conclusions enunciated in Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, relative to the application of Civil Rights provisions as they apply to the civil liability of judges of general jurisdiction. I must concur with plaintiff to the extent of admitting that its language appears to bestow sweeping and unqualified effect to the Civil Rights Acts.

Nevertheless, I am cognizant that the judicial officer involved in this circuit's decision was a justice of the peace, not a judge of a court of general jurisdiction, as in the case at bar. More important, the Picking case was decided in 1945, without benefit of the illumination and compelling analogy to be found in the Supreme Court in Tenney v. Brandhove, supra. See Francis v. Crafts, supra.

In construing the language of the old Civil Rights Act, 8 U.S.C.A. § 43, which more recently has been re-enacted into the sections under which the instant proceeding was brought, the Supreme Court held that the Civil Rights Statutes were not intended to make legislators personally liable for damages to a witness injured by a committee exercising legislative power.

Crucial to the issue raised is this most compelling language of the Supreme Court:

"Did Congress by the general language of its 1871 statute mean to overturn the tradition of legislative freedom achieved in England by Civil War and carefully preserved in the formation of State and National Governments here? Did it mean to subject legislators to civil liability for acts done within the sphere of legislative activity? Let us assume, merely for the moment, that Congress has constitutional power to limit the freedom of State legislators acting within their traditional sphere. That would be a big assumption. * * * We cannot believe that Congress—itself a staunch advocate of legislative freedom—would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us." Tenney v. Brandhove, supra [341 U.S. 367, 71 S.Ct. 788].

It would appear incongruous and contradictory to the doctrine of judicial independence, to hold that judicial officers of a state stand in a less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity.

I have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in such literal and unqualified manner as to impose a liability for damages upon a state judicial officer for acts done in the exercise of his judicial function.

■ It is axiomatic that the same immunity which applies to state legislators in the performance of their legislative duties would have application to the official acts of judges. Francis v. Crafts, supra; Cobb v. City of Malden, supra.

If plaintiff's thesis requiring the imposition of civil liability upon judges in the performance of their civil duties were to be given effect, utter chaos would pervade the judicial system. Judges would render decisions under the constant fear of civil suits, and the administration of justice would cause judges to temper their decisions with the sole view of avoiding disgruntled litigants. Judges would require the constant service of members of the bar in defending their actions, and would always face the peril of showing favoritism toward those attorneys whose services they have been required to invoke. This necessity would again tend to convince an unsuccessful litigant that rights under the Civil Rights Statutes have been denied. In such cases where judges should disqualify themselves as when counsel had previously served in their behalf, circumstances would prove untenable in those numerous judicial districts where the complement of the court consists of a single judge. Indeed, judges not only would be confronted with the stark realism of having their savings and holdings frittered away in defending themselves against a multiplicity of frivolous and unfounded civil suits, but would also suffer the embarrassment and degradation of defending themselves against the sniping and collateral attacks of dissatisfied litigants. It would create an endless chain and vicious circle to which no solution or correction could ever be attained.

The independence of the judiciary would be of little value if judges could be subjected to the cost and inconvenience and distractions of a trial upon the conclusion of a case, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

In times of political passion, vindictive motives are readily attributed to judicial conduct and is readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.

Plaintiff refers to a 1950 decision of Judge Forman who was a member of the complement of the Third Circuit Court which rendered the decision of Picking v. Pennsylvania R. Co. as giving credence to the conclusion that the Picking case is yet binding upon this circuit in spite of Tenney v. Brandhove, supra. With this view, I cannot concur.

The case to which reference is made, Cooper v. Hutchinson, D.C., 88 F.Supp. 774, raised the question whether it is intended by the Civil Rights Act that an allegation of an infringement of Federal Constitutional rights by a state court judge during criminal proceedings pending before him shall give rise to an action in a federal court that will permit it to intrude its injunctive hand into the state court proceedings and bring them to a halt.

■ The issue for determination in no way was related to the civil liability of judges in the performance of their official duties. It is well recognized that injunctive relief is a remedy commonly available when members of the court do not act in accordance with law.

■■ I cannot conceive of imposing civil liability upon the Prothonotary for his failure to file of record the petition in question, for I am compelled to take judicial notice of the uncontroverted fact that the Prothonotary is the Clerk of the Supreme Court and is required to follow the instructions of the court which he represents. In this connection there ex-

isted no discretion on his part but to obey the order and mandate of the court.

 Thus, assuming that the failure to file said petition was patently violative of complainant's civil rights, no basis in law exists whereby civil liability can be imposed upon a public official acting pursuant to court order and direction.

To the contrary, were the Prothonotary who holds his position by sufferance of the Supreme Court of Pennsylvania, to refuse to obey its mandate, he would be contemptuous of that court and subject to summary dismissal.

But even assuming that I were in error in my conclusions as to the effect and applicability of the Civil Rights Statutes, another cogent and strikingly significant reason exists why jurisdiction does not lie with this court.

The complaint charges that the plaintiff was wronged by the dismissal of his petition without a hearing and by the refusal to enter the petition on the court's records.

 The petition to the Supreme Court charged a number of members of the bar, including a Common Pleas judge, with professional misconduct. Such a petition invokes the inherent power of the courts to maintain the integrity of the bar and to see that courts and its members do not fall into disrepute with the general public through unprofessional or fraudulent conduct. In re Disbarment Proceedings, 321 Pa. 81, 184 A. 59.

 Plaintiff's petition, just as any other complaint of professional misconduct, merely supplied information for the court's consideration. It is ridiculous to assert that the court has no alternative but to take action against the person complained of. If the court considers that no offense has been committed; or that the allegations of the complaint are insufficient, immaterial, impertinent or scandalous; or that the complaint has been filed from an improper motive; or for any other reason decides not to proceed with the matter, the complainant has no recourse.

 Plaintiff is an informer and nothing more, and as such, has no right to be heard at any stage of the proceeding, save as the court or its committee may call upon him to testify. The plaintiff has averred nothing to show that his interest in the matter before the Supreme Court differed in any particular from the interest of any other citizen and member of the bar, none of whom have any standing as a party in interest.

 In view of the fact that plaintiff's sole right was to make a complaint, if he chose, and submit the same to the court for appropriate disciplinary action, it is my judgment plaintiff fails to disclose the denial of any rights under Pennsylvania law and the Rules of the Supreme Court, or the Constitution and laws of the United States.

For the reasons stated, I must, therefore, conclude that the instant complaint fails to state a cause of action upon which relief can be granted, and that the same should be dismissed.

Subsidiary to defendants' motion to dismiss, defendants move to strike scandalous, irrelevant and impertinent material which allegedly appears in the complaint and exhibits attached to the plaintiff's complaint.

Rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C., provides that the court may order stricken from any pleading irrelevant, impertinent or scandalous material.

In this connection, I deem it noteworthy to state that never has the security of our people been more jeopardized than by scurrilous and unfounded innuendo, viciously contrived to blacken and besmirch reputation of honest, patriotic Americans.

Never has humanity been in greater need of restraint and caution in dealing with the affairs and reputations of individual citizens.

 In view of the dismissal of the instant complaint, however, no purpose could be served in evaluating the nature of the appended material under attack.

An appropriate Order is entered.