223 F.2d 782
 Jimmie TATE, Odell Pickett, Richard Girtman, Willie Bridges,
and, others similarly situated, Appellants,
v.
Frank ARNOLD, Justice of the Peace, in and for Egypt
Township, Ashley County, Arkansas, Appellee.
 No. 15285.
 United States Court of Appeals Eighth Circuit.
 June 28, 1955.
 
 DuVal L. Purkins, Warren, Ark. (E. Clifton Bond, Jr., Warren, Ark., was with him on the brief), for appellants.
 Ovid T. Switzer and W. P. Switzer, Crossett, Ark., filed brief for appellee.
 Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.
 WOODROUGH, Circuit Judge.
 
 
 1
 This action was brought by the named appellants, for and on behalf of themselves and others similarly situated, to obtain a declaratory judgment, injunctive relief, and money damages, against Frank Arnold who is a duly elected, qualified and acting justice of the peace in Ashley County, Arkansas. Jurisdiction was based on the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202; the Civil Rights, 42 U.S.C.A. § 1938 (formerly 8 U.S.C.A. § 43); and the 14th Amendment to the Constitution of the United States. Appellee's motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted was sustained and this appeal follows. The parties will be referred to as they appeared in the court below.
 
 
 2
 For their cause of action against the defendant, plaintiffs alleged in their complaint:
 
 
 3
 '4.
 
 
 4
 'In October of 1954, Defendant, solicited from B. & G. Grocery, Crossett, Arkansas, delinquent accounts for collection, and among others, received an account of said Grocery against Jimmie Tate for an alleged indebtedness of $12.00. Upon such claim, said Frank Arnold, as Justice of the Peace issued a Writ of Garnishment to the Crossett Lumber Company, Tate's employer, garnishing the wages of Tate, and without requiring the filing of any form of Complaint or allegations for garnishment or verified account or the execution of a bond; and, without services of any summons or notice of any kind against Jimmie Tate, whose first knowledge of such garnishment was received when his wages were withheld and he was so notified by his employer, Crossett Lumber Company, in the form of a letter dated October 21, 1954, a copy of which is attached hereto and made a part hereof as Exhibit No. 1. * * *
 
 
 5
 '6.
 
 
 6
 'As set out in paragraphs 4 and 5 of this Complaint, not only the two named plaintiffs, but divers and sundry other employees of the Crossett Lumber Company, and its affiliated companies, between January 1, 1954, and December 1, 1954, and for some years prior thereto, have suffered irreparable damage, harassment, invasion, loss of their employment, and deprivation of the their rights in the continued wrongful and unlawful execution, issuance and service on their employers of numerous claims of debt on such spurious and illegal Writs of Garnishment before Judgment executed and issued by Frank Arnold, as Justice of the Peace, acting under color of Arkansas Statutes, § 31-501 et seq. and, has thereby subjected, or caused to be subjected, these plaintiffs, all citizens of the United States, to the deprivation of their rights, privileges, and immunities without due process of law as secured to each of them by the Constitution and laws of the United States.
 
 
 7
 '7.
 
 
 8
 'Plaintiffs have suffered irreparable injury; and, will hereafter so suffer, the continued placing in jeopardy of their jobs and mode of livelihood; a multiplicity of unjust suits; a five days wrongful withholding of their wages after filing a schedule; the deprival of their right to be heard in court under due process of law any claim for debt against each of them; the frequent burdensome expense of employment of Counsel to assert their rights to Schedule against such unlawful Writs of Garnishment; and, the exaction of illegal court costs, and, are entitled to an Injunction directed against Frank Arnold, Justice of Peace, in and for Egypt Township, Ashley County, Arkansas, perpetually restraining him from issuing, serving or executing against any employer of these plaintiffs, under color of law, Writs of Garnishment before Judgment without first requiring any and all creditors of any one or all of the plaintiffs to file the requisite bond, allegations for garnishment, itemized claim to debt, summons and writs as provided by the Laws of Arkansas.'[1]
 
 
 9
 The letter from plaintiff's employer, attached as an exhibit to the complaint, notified plaintiffs that upon the third such garnishment their services with the company would be terminated. Plaintiffs prayed that the court declare the rights of the parties; that defendant be permanently enjoined from further illegal and unlawful issuance and execution of writs of garnishment before judgment; and that plaintiffs recover the sum of $500.00 damages from the defendant.
 
 
 10
 This appeal presents the narrow question of whether, under the allegations set forth in the complaint, plaintiffs stated a claim against defendant upon which relief could be granted. It was alleged, as required to bring the action within the purview of the Civil Rights Act,[2] that defendant was acting under color of state law in issuing the unlawful writs of garnishment before judgment. In passing on the motion to dismiss the trial court accepted all of the allegations of the complaint as true. The sole ground of dismissal was that the action against defendant would not lie because of his judicial immunity to suit for acts performed in his official capacity.
 
 
 11
 Plaintiffs do not seriously contend that this action could have been maintained in the face of the rule of judicial immunity accorded under the common law. The argument is made, however, that the Congress, through enactment of the Civil Rights Act, intended and did deprive state judicial officers of immunity from suit for acts which, when done 'under color of law', constitute violations of rights guaranteed by the 14th Amendment. Plaintiffs' position in this respect is not without support.
 
 
 12
 In Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 250, the case chiefly relied on by plaintiffs, an action for damages was brought against a justice of the peace, among others, alleging that said defendant had deprived plaintiffs of their liberty without due process of law by denying and refusing to grant them a hearing following their arrest on an extradition warrant. In reversing the order of the trial court dismissing the complaint, the Court of Appeals held with respect to the claim of judicial immunity by the defendant justice of the peace that,
 
 
 13
 '* * * we are not unmindful of the absolute privilege conferred by the common law upon judicial officers in the performance of their duties. * * * The absolute privilege was extended even to the conduct of judicial officers dictated by malice. But the privilege as we have stated was a rule of the common law. Congress possessed the power to wipe it out. We think that the conclusion is irresistible that Congress by enacting the Civil Rights Act sub judice intended to abrogate the privilege to the extent indicated by that act and in fact did so. * * * The statute must be deemed to include members of the state judiciary acting in official capacity. The result is of fateful portent to the judiciary of the several states.'
 
 
 14
 See also, Cooper v. Hutchinson, 3 Cir., 184 F.2d 119; McShane v. Moldovan, 6 Cir., 172 F.2d 1016.
 
 
 15
 But courts generally have refused to accept the holding in that case as the correct view of the law. For criticism of the Picking case and for precedents to the effect that the Civil Rights Act did not deprive state judicial officers of immunity for acts performed in their official capacity, see the following decisions: Francis v. Crafts, 1 Cir., 203 F.2d 809, certiorari denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Ginsburg v. Stern, D.C.Pa., 125 F.Supp. 596; United States ex rel. Peters v. Carson, D.C.Pa., 126 F.Supp. 137; Souther v. Reid, D.C.Va., 101 F.Supp. 806; Morgan v. Sylvester, D.C.N.Y., 125 F.Supp. 380. Also, see Dunn v. Estes, D.C.Mass., 117 F.Supp. 146. In fact, the District Court for the Western District of Pennsylvania has held that the decision in the Picking case is no longer binding upon that circuit. Ginsburg v. Stern, supra; United States ex rel. Peters v. Carson, supra.
 
 
 16
 The courts which have reached a result contrary to the decision in the Picking case have based their reasoning primarily upon the United States Supreme Court decision in Tenny v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, which was handed down several years after the Picking case. In that case the Supreme Court had before it the question of whether the Civil Rights Act subjected members of a state legislature to civil liability for acts done within the sphere of legislative activity. After noting the broad language of the statute and the absence of Congressional debate defining the limits thereof, the Supreme Court said, 341 U.S. at page 376, 71 S.Ct. at page 788:
 
 
 17
 'We cannot believe that Congress itself a staunch advocate of legislative freedom-- would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us.'
 
 
 18
 Since the doctrine of judicial immunity is at least as well grounded in history and reason as is the rule of legislative immunity, the courts have interpreted the language quoted from Tenny v. Brandhove, supra, as authority for holding that the Civil Rights Act did not abrogate judicial immunity. As said by the court in Francis v. Crafts, supra (203 F.2d 812):
 
 
 19
 'Certainly it would be absurd to hold, in the application of the Civil Rights Act, that judicial officers of a state stand in any less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity.'
 
 
 20
 Again, in Ginsburg v. Stern, supra, 125 F.Supp. at pages 601, 602, it was said:
 
 
 21
 'It would appear incongruous and contradictory to the doctrine of judicial independence, to hold that judicial officers of a state stand in a less favorable position than do state legislators, in respect to immunity from civil liability for acts done in their official capacity.
 
 
 22
 'I have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in such literal and unqualified manner as to impose a liability for damages upon a state judicial officer for acts done in the exercise of his judicial function.
 
 
 23
 'It is axiomatic that the same immunity which applies to state legislators in the performance of their legislative duties would have application to the official acts of judges.'
 
 
 24
 We are convinced the decisions holding that the common law rule of judicial immunity has not been abrogated by the enactment of the Civil Rights Act are based on sound considerations of public policy and practical necessity. The purpose and necessity of the rule, its long and revealing history, are so well stated in the cases cited and many others, that we refrain from a further restatement of those expressions here. We deem it sufficient to say that the general language employed in the Civil Rights Act does not evidence a clear Congressional intent to impair the long standing rule of judicial immunity.
 
 
 25
 Defendant, as a justice of the peace having jurisdiction of the parties and the subject matter, is entitled to the protection afforded by the rule of judicial immunity. McIntosh v. Bullard, Earnheart & Magness, 95 Ark. 227, 129 S.W. 85; Yaselli v. Goff, 2 Cir., 12 F.2d 396. We conclude, therefore that the trial court did not err in sustaining the motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted.
 
 
 26
 We have considered all of the cases cited in support of plaintiffs' position but do not find them inconsistent with our decision herein. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, appears not to be in point here. In that case the Supreme Court reversed judgments of the Supreme Courts of Missouri and Michigan granting judicial enforcement of private restrictive covenants. The Supreme Court held that in granting judicial enforcement of such private agreements, the states acted to deny petitioners the equal protection of the laws, contrary to the 14th Amendment. We do not read the opinion as passing on the question of judicial immunity.
 
 
 27
 As our decision on the question of judicial immunity requires affirmance of the judgment of dismissal it becomes unnecessary to consider plaintiffs' other arguments on the appeal to the effect that the complaint stated a claim under the Civil Rights Act and the 14th Amendment.
 
 
 28
 The judgment appealed from is affirmed.
 
 
 
 [1]
 Arkansas Statutes, § 27-301, provides:
 'A civil action is commenced by filing in the office of the clerk of the proper court a complaint and causing a summons to be issued thereon.'
 Arkansas Statutes, § 31-501, provides:
 'In all cases where any plaintiff may begin an action in any court of record, or before any justice of the peace, or may have obtained a judgment before any of such courts, and such plaintiff shall have reason to believe that any other person is indebted to the defendant, or has in his hands or possession goods and chattels, moneys, credits and effects belonging to such defendant, such plaintiff may sue out a writ of garnishment, setting forth such claim, demand or judgment, and commanding the officer charged with the execution thereof to summon the person therein named, as garnishee, to appear at the return day of such writ and answer what goods, chattels, moneys, credits and effects he may have in his hands or possession belonging to such defendant to satisfy said judgment, and answer such further interrogatories as may be exhibited against him; provided, if the garnishment be issued before the judgment, the plaintiff shall give bond in double the amount for which the garnishment is issued, that he will pay the defendant all damages that he may sustain by the wrongful bringing of his suit or the issuing of the garnishment.'
 Arkansas Statutes, § 31-505 provides:
 'The plaintiff shall on the day on which he sues out his writ of garnishment prepare and file all the allegations and interrogatories, in writing, with the clerk or justice issuing such writ upon which he may be desirous of obtaining the answer of such garnishee touching the goods and chattels, moneys, credits and effects of the said defendant, and the value thereof, in his hands and possession, at the time of the service of such writ or at any time thereafter.'
 
 
 [2]
 42 U.S.C.A. § 1983, provides:
 'Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979'.