**Paul GINSBURG, Plaintiff,**

v.

**Horace STERN et al., Defendants.**

**Civ. A. No. 12643.**

United States District Court
W. D. Pennsylvania.

July 19, 1956.

Paul Ginsburg, Pittsburgh, Pa., pro se.

Elder W. Marshall, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

GOURLEY, Chief Judge.

This matter comes before the court on plaintiff's motion for leave to file an amended complaint premised on Rule 15 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1]

The motion has been most thoroughly considered by the court through extended oral argument, briefs of the adversary parties, and evaluation and comparison of the allegations in the amended complaint with the allegations as set forth in the original complaint.

The original proceeding was based upon the Civil Rights Act of the United States, as amended. 42 U.S.C.A. § 1983 et seq.[2]

1. "(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

2. "1983. Civil action for deprivation of rights
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

"1985. Conspiracy to interfere with civil rights—Preventing officer from performing duties
\* \* \* \* \*
"(2) \* \* \* or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class or persons, to the equal protection of the laws;

"(3) \* \* \* in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

"1986. Same; action for neglect to prevent
"Every person who, having knowledge that any of the wrongs conspired to

Said action was filed by the plaintiff Pittsburgh attorney against the Chief Justice of the Supreme Court of Pennsylvania and the Prothonotary of that Court for its Western District. The complaint alleged that the defendants conspired to deprive the plaintiff of rights and privileges secured by the statutes of the United States known as the Civil Rights Statute, as well as to obstruct and defeat the due course of justice with intent to deny to plaintiff the equal protection of the laws as provided by the Constitution of the United States.

The original complaint was dismissed by this court on October 26, 1954. Ginsburg v. Stern, D.C., 125 F.Supp. 596. Said decision was affirmed by the United States Court of Appeals for the Third Circuit on the legal thesis that the plaintiff in the original proceeding had not stated a cause of action cognizable in a United States District Court under the Civil Rights Acts now embodied. 42 U.S.C.A. § 1983 et seq., or under any other statute or rule of law. Ginsburg v. Stern, 3 Cir., 225 F.2d 245.

The amended complaint eliminates Patrick N. Bolsinger, the Prothonotary of the Supreme Court of Pennsylvania for its Western District, as a party defendant and seeks to add as defendants, in addition to Horace Stern, the Chief Justice of the Supreme Court of Pennsylvania, the associate members of said court: Charles Alvin Jones, John C. Bell, Jr., Thomas McKeen Chidsey, Michael A. Musmanno, and John C. Arnold, individually and jointly as justices of the Supreme Court of Pennsylvania.

The amended complaint alleges jurisdiction of this court to be based not only on the Civil Rights Statute of the United States but also upon the Fourteenth Amendment of the Constitution of the United States and alleges damages in excess of $3,000, exclusive of interest and costs.

The amended complaint further alleges a legal right and duty to prosecute the disciplinary proceeding, alleging an interest of the plaintiff in the outcome thereof.

The defendants' conduct, of which the plaintiff now complains, is alleged to have been done and committed by the members of the Supreme Court of Pennsylvania in the guise of, and color of office, as Justices of the Supreme Court, and were effected in combination, conspiracy, confederation and joint agreement of the defendants to deprive the plaintiff of his substantive and procedural rights under law, arbitrarily and discriminatorily, and as a result thereof plaintiff has been deprived of his rights and privileges as a citizen of the United States.

Specifically, it is alleged that as a result of said conspiracy, the members of the Supreme Court individually and jointly refused to file of record in the office of the Prothonotary of the Supreme Court of Pennsylvania, with an assigned number, a certain petition of plaintiff, addressed to the judges of the Supreme Court of Pennsylvania, wherein the plaintiff sought disciplinary action against a Judge of the Court of Common Pleas of Allegheny County, Pennsylvania, fifteen members of the Committee on Offenses of the Court of Common Pleas of Allegheny County, Pennsylvania, and four individual members of the Bar of the Court of Allegheny County, Pennsylvania. That the members of the Supreme Court ordered that said petition not be filed by the Prothonotary of

be done, and mentioned [in section 47] of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; * * *."

the Supreme Court of Pennsylvania and that said action hindered, obstructed and defeated the due course of justice and unlawfully deprived plaintiff of his rights, thereunto appertaining. Furthermore, that plaintiff has been injured in his right to earn a living and in his professional standing in the various courts of the Commonwealth of Pennsylvania, and that he has suffered loss of prestige and good will, and has been damaged personally and professionally, and demands damages in excess of $3,000 from each of the members of the Supreme Court of Pennsylvania together with a trial by jury.

The proceeding about which a complaint was made in the State courts was presented under Rule 17 of the Pennsylvania Supreme Court.[3]

Said proceeding was transmitted by the Prothonotary of the State Court to the Chief Justice of the Supreme Court of Pennsylvania, and that subsequent thereto it was returned to the Prothonotary of said court with an order of said court endorsed thereon in longhand as follows:

"Petition dismissed. Per Curiam, June 28th, 1954."

Basically, the cause of action as set forth in the amended complaint is for all practical intents and purposes the same cause of action as set forth in the original complaint with the exception of the matters hereinbefore referred to.

■ Plaintiff contends that under the Provisions of Rule 15(a) of the Federal Rules of Civil Procedure he is entitled to amend as a matter of course. 28 U.S.C.A.Rule 15(a). Such, undoubtedly, is the law before a responsive pleading is served. I am further cognizant of the fact that a motion to dismiss is not a responsive pleading within the terms of this rule. United States v. Newbury Mfg. Co., 1 Cir., 123 F.2d 453; Keene Lumber Co. v. Leventhal, 1 Cir., 165 F.2d 815.

■ Nevertheless, this circuit has recognized that the right to amend as a matter of course is terminated once the action has been dismissed. Kelly v. Delaware River Joint Commission, 3 Cir., 187 F.2d 93. I am satisfied that thereafter the pleading can be amended only within the discretion of the court. Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519; Keene Lumber Co. v. Leventhal, supra.

■ In the exercise of my discretion, I must, therefore, determine, resolving as I must all factual issues in favor of the plaintiff, whether or not as a matter of law an action of this nature can be maintained, where a conspiracy is alleged against the members of the Supreme Court of Pennsylvania for actions which the members of said court performed in their official capacities.

The principle, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and had never been denied in the courts of this country prior to the adoption of the Civil Rights Statutes in the United States.

It was considered essential in all courts that the judges who are empowered to administer the law should be permitted

---

3. "Rule 17. * * * (d) Complaints against members of the bar of this court alleging misconduct, shall be made to the board; if made to the court, they may be forthwith certified to the board. If the matter is of sufficient importance to require further investigation, the complainant shall be directed to file a formal petition in paragraph form, setting forth the charges against the respondent. If the petition is sufficient, the respondent shall be required to file an answer, and thereafter the matter shall be referred to a committee of three members of the board. Testimony may be taken by any one or more of such committee; the hearing shall be private unless the respondent shall request that it be public, or unless the committee determine that it shall be public."

to administer it under the protection of the law, independently and freely, without favor and without fear. Said firmly embedded rule of law was considered not for the protection or benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences. It was reasoned that a judge could not exercise his office if he were in daily and hourly fear of an action being brought against him, and of having the question submitted to a jury whether a matter on which he had commented judicially was or was not relevant to the case before him.

A defeated party to litigation may not only think himself wronged, but may attribute wrong motives to the judge whom he holds responsible for his defeat. He may think that the judge has allowed passion or prejudice to control his decision. To allow a judge to be sued in a civil action on a complaint charging the judge's acts were the result of partiality, or malice, or corruption, would deprive the judges of the protection which is regarded as essential to judicial independence. It was not in the public interests that such a suit should be maintained; and it was a fundamental principle of English and American jurisprudence that such an action could not be maintained. Yaselli v. Goff, 2 Cir., 12 F.2d 396, 399.

 Prior to the Civil Rights Statutes, in our system of jurisprudence it, therefore, appeared a time-honored immunity of judges existed from civil liability for their official or judicial acts, no matter how erroneous, malicious or corrupt they may have been. Bradley v. Fisher, 13 Wall. 335, 349, 80 U.S. 335, 349, 20 L.Ed. 646; Papagianakis v. The Samos, 4 Cir., 186 F.2d 257; Tinkoff v. Holly, 7 Cir., 209 F.2d 527.

The Constitution of the United States and Civil Rights Statutes and Their Effect upon the Judiciary

The question now posed before this court is whether or not such immunity continues in effect after the enactment of the Civil Rights Statutes and under the provisions of the Fourteenth Amendment to the Constitution of the United States.

As an aftermath of Civil War and national convulsion, the Civil Rights Statutes were forged by the great statesmen and lawyers of both Houses of Congress.

It must be considered whether these stalwart defenders of constitutional government intended to employ the Civil Rights Statutes as a bludgeon to strike asunder the fundamental and basic concept of judicial independence—which by and large feeds life blood to the arteries of the organism of free government.

The apparently sweeping and unqualified language of the old Civil Rights Act, 8 U.S.C.A. § 43 and more recently changed to 42 U.S.C.A. §§ 1983, 1985, 1986, as amended, seems to say that every person in official position, whether executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses or exemptions, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they believed to be their official duty. Reading the language of the Act in its broadest sweep, it would seem to make no difference that the conduct of the defendants might not have been tortious at common law; for the Act, if read literally, creates a new federal tort, where all that has to be proved is that the offender as a result of his conduct under color of state law has in fact caused harm to the plaintiff by depriving him of rights secured by the Constitution of the United States and the Civil Rights Statutes.

Fortunately Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, has relieved us of the necessity of giving the Civil Rights Act such an awesome and

unqualified interpretation. That case held that the broadly expressed terms of the Civil Rights Act could not have been intended to deprive state legislators of their pre-existing and well-established complete immunity from civil liability for official acts done within the sphere of legislative activity. Francis v. Crafts, 1 Cir., 203 F.2d 809, 811; Cobb v. City of Malden, 1 Cir., 202 F.2d 701.

I have given most thorough consideration to the conclusions enunciated in Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, relative to the application of Civil Rights provisions as they apply to the civil liability of judges of general jurisdiction. I must concur with plaintiff to the extent of admitting that its language appears to bestow sweeping and unqualified effect to the Civil Rights Acts.

Nevertheless, I am cognizant that the judicial officer involved in this circuit's decision was a justice of the peace, not a judge of a court of general jurisdiction or a court of record in the Commonwealth of Pennsylvania, as in the case at bar. More important, the Picking case was decided in 1945, without benefit of the illumination and compelling analogy to be found in the Supreme Court in Tenney v. Brandhove, supra. See Francis v. Crafts, supra.

In construing the language of the old Civil Rights Act, 8 U.S.C.A. § 43, which more recently has been re-enacted into the sections under which the instant proceeding was brought, the Supreme Court held that the Civil Rights Statutes were not intended to make legislators personally liable for damages to a witness injured by a committee exercising legislative power.

Crucial to the issue raised is this most compelling language of the Supreme Court:

"Did Congress by the general language of its 1871 statute mean to overturn the tradition of legislative freedom achieved in England by Civil War and carefully preserved in the formation of State and National Governments here? Did it mean to subject legislators to civil liability for acts done within the sphere of legislative activity? Let us assume, merely for the moment, that Congress has constitutional power to limit the freedom of State legislators acting within their traditional sphere. That would be a big assumption. * * * We cannot believe that Congress—itself a staunch advocate of legislative freedom— would impinge on a tradition so well grounded in history and reason by covert inclusion in the general language before us." Tenney v. Brandhove, supra [341 U.S. 367, 71 S.Ct. 788].

It would appear incongruous and contradictory to the doctrine of judicial independence, to hold that judicial officers of a state stand in a less favorable position than do State legislators, in respect to immunity from civil liability for acts done in their official capacity.

I have no doubt that the Third Circuit would no longer feel obliged, as it did in the Picking case, to read the Civil Rights Act in such literal and unqualified manner as to impose a liability for damages upon a State judicial officer for acts done in the exercise of his judicial function.

█ It is axiomatic that the same immunity which applies to State legislators in the performance of their legislative duties would have application to the official acts of judges. Francis v. Crafts, supra; Cobb v. City of Malden, supra; Kenney v. Fox, 6 Cir., 232 F.2d 288; Thompson v. Heither, 6 Cir., 235 F.2d 176.

If plaintiff's thesis requiring the imposition of civil liability upon judges in the performance of their civil duties were to be given effect, utter chaos would pervade the judicial system. Judges would render decisions under the constant fear of civil suits, and the administration of justice would cause judges to temper their decisions with the sole view of

avoiding disgruntled litigants. Judges would require the constant service of members of the bar in defending their actions, and would always face the peril of showing favoritism toward these attorneys whose services they have been required to invoke. This necessity would again tend to convince an unsuccessful litigant that rights under the Civil Rights Statutes have been denied. In such cases where judges should disqualify themselves as when counsel had previously served in their behalf, circumstances would prove untenable in those numerous judicial districts where the complement of the court consists of a single judge. Indeed, judges not only would be confronted with the stark realism of having their savings and holdings frittered away in defending themselves against a multiplicity of frivolous and unfounded civil suits, but would also suffer the embarrassment and degradation of defending themselves against the sniping and collateral attacks of dissatisfied litigants. It would create an endless chain and vicious circle to which no solution or correction could ever be attained.

The independence of the judiciary would be of little value if judges could be subjected to the cost and inconvenience and distractions of a trial upon the conclusion of a case, or to the hazard of a judgment against them based upon a jury's speculation as to motives.

In times of political passion, vindictive motives are readily attributed to judicial conduct and is readily believed. Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.

■ I, therefore, conclude, admitting the allegations of the amended complaint to be true and construing each of said allegations most favorable to the plaintiff, that the amended complaint fails to state a cause of action upon which relief can be granted against any of the defendants in said proceeding, individually or jointly. I re-affirm my belief that members of the Supreme Court of the Commonwealth of Pennsylvania, or of any other court of record or of general jurisdiction in the Commonwealth of Pennsylvania, are immune and exempt from civil liability for acts done in their official capacity as members of said court, and, therefore, in the exercise of my discretion, under the provisions of Rule 15(a), the motion of the plaintiff for leave to file an amended complaint will be denied.

An appropriate Order is entered.

### Order

And Now, this 19th day of July, 1956, motion for leave to file amended complaint will be, and it hereby is, refused. Judgment is entered in favor of Horace Stern, Charles Alvin Jones, John C. Bell, Jr., Thomas McKeen Chidsey, Michael A. Musmanno, and John C. Arnold, defendants, and against Paul Ginsburg, plaintiff, together with costs.