**DUNN v. ESTES et al.**
Civ. No. 52-1476.

United States District Court,
D. Massachusetts.

Dec. 3, 1953.

Isadore H. Y. Muchnick, Boston Mass., for plaintiff.

George Fingold, Atty. Gen., Matthew S. Heaphy, Asst. Atty. Gen., for Elliot E. McDowell and Miriam Van Waters.

John W. McIntyre, McIntyre & Henry, Attleboro, Mass., for Gazzola & Marron.

Edward O. Proctor, Dever & Proctor, Boston, Mass., for Olive Nerney.

FORD, District Judge.

We have here another phase of a complaint under the Civil Rights Act. Plaintiff brings her suit, as she alleges, under §§ 43 and 47(3) of Ch. 3 of Title 8 U.S. C.A.[1] The complaint alleges a conspiracy between the Justice of the Fourth District Court of Bristol County, Massachusetts (Estes), the chief probation officer (Nerney), the chief of police (Marron), a police sergeant (Gazzola) and the superintendent of the Reformatory for Women at Framingham (Van Waters), alleging that they, acting under color of state statutes, illegally incarcerated and imprisoned the plaintiff in the Reformatory for Women at Framingham on a charge of neglect of her minor children without due process of law, i. e., without a fair trial.

Olive Nerney, probation officer, filed motions to dismiss and for summary judgment alleging that all of her actions

[1]. Now §§ 1983 and 1985(3) respectively, of Title 42 U.S.C.A.

were in the performance of her duties as probation officer, G.L. (Ter.Ed.) Mass. c. 276, § 85, for the Fourth District Court of Bristol County and for these no liability is imposed on her because the Civil Rights Act does not deprive public officers of their established immunity from civil liability for their official acts.

This court very recently had occasion to consider the immunity of judges from civil liability for their official acts, Francis v. Lyman, D.C., 108 F.Supp. 884, affirmed Francis v. Crafts, 1 Cir., 203 F.2d 809, certiorari denied Francis v. Crafts, 74 S.Ct. 43 and the Supreme Court in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, decided that the Civil Rights Act could not have intended to deprive state legislators of their pre-existing and well-established complete immunity from civil liability for official acts done within the sphere of legislative activity, and in that case made it clear that the literal and unqualified language of the Civil Rights Act did not subject every person in an official, executive, judicial, or legislative position who, under color of state law, subjected or caused to be subjected any person to the deprivation of civil rights guaranteed by the Constitution of the United States.

There is no question from the affidavits filed that the acts of the defendant Nerney complained of by the plaintiff were performed within the sphere of her official duties as a probation officer of the Bristol Court, and the questions here are: (1) Is there a long-standing and recognized doctrine that public officials are immune from civil liability for consequences in the performance of their official duties and (2) Did Congress intend to destroy that immunity in the passage of the Civil Rights Act?

It is apparent from the decided cases that the first question must be answered in the affirmative. The Civil Rights Act stems from 1871. In 1845, in Kendall v. Stokes, 3 How. 87, 44 U.S. 87, 97, at page 98, 11 L.Ed. 506, 833, a suit against a postmaster acting in his official capacity for the suspension by the postmaster on the books of the post office department of certain credits for transporting mail in favor of Kendall, the court stated: "But a public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion; even although an individual may suffer by his mistake. A contrary principle would indeed be pregnant with the greatest mischiefs. It is unnecessary, we think, to refer to the many cases by which this doctrine has been established. It was fully recognized in the case of Gidley, Exec. of Holland v. Ld. Palmerston, 7 J. B. Moore, 91, 3 B. & B. 275."

Through a long line of cases this principle of immunity with respect to official acts has been recognized as firmly entrenched in the common law. In Spalding v. Vilas, 161 U.S. 483, at page 498, 16 S.Ct. 631, 637, 40 L.Ed. 780, a suit against the postmaster general for libel, the court stated: "We are of opinion that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of the performance of their judicial functions apply, to a large extent, to official communications made by heads of executive departments when engaged in the discharge of *duties imposed upon them by law.*" (Emphasis mine.) See Yaselli v. Goff, 2 Cir., 12 F.2d 396, suit against assistant attorneys general, quasi-judicial officers, for malicious prosecution; Standard Nut Margarine Co. of Florida v. Mellon, 63 App.D.C. 339, 72 F.2d 557, suit against secretary and assistant secretaries of the treasury for erroneous construction of statute causing taxable loss to plaintiff's oleomargarine product; Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676, suit for procuring plaintiff's disbarment against judges, assistant clerks, and committee on grievances for the Supreme Court; Gibson v. Reynolds, 8 Cir., 172 F.2d 95, suit against draft board mem-

bers for improper classification; Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211, suit against attorney general, members of parole board, director of prison, parole executive, and warden of penitentiary, for malicious prosecution.

Judge Miller in Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 137–138, 118 A.L.R. 1440, sets out the policy in a clear fashion: "There is also a general rule that if any officer—ministerial or otherwise—acts outside the scope of his jurisdiction and without authorization of law, he is liable in an action for damages for injuries suffered \* \* \*. See Bradley v. Fisher, 13 Wall. 335, 351–352, 20 L.Ed. 646. On the contrary, if the act complained of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law. This rule of immunity was first applied \* \* \* in the case of judges \* \* \*."

■ Thus from what has been said, it ·is crystal clear that certain public officials, at least those exercising quasi-judicial functions, acting within the sphere of their duties enjoy the same absolute privilege as judges and the reason for the policy is, as Judge Hand states in Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 580, 581, to permit public officers to act unflinchingly in the discharge of their duties and without a constant dread of retaliation.

Did Congress, by the civil rights legislation, intend to impinge upon a doctrine so long established and so deeply imbedded in the law?

■ Although as I stated in Francis v. Lyman, supra, 108 F.Supp. at page 885, in discussing the immunity of judges, it may be true that a literal construction of the Civil Rights Act may sweep public officials, even judges, acting under color of state law, within its provisions because of the phrase "every person", I cannot conclude that Congress intended to annihilate a doctrine so deeply rooted in the law without an express declaration to that effect. The reasoning of the Supreme Court in Tenney v. Brandhove, supra, and of Judge Magruder, in approving Francis v. Lyman, supra, supports this view. The Civil Rights Act because of its general language and apparent broad application is, to be sure, more troublesome to construe, but I believe it can be cut down to size by a common-sense approach, especially needed in the light of the fact that the limits of what are now §§ 43 and 47(3) were not spelled out in debate. Tenney v. Brandhove, supra, 341 U.S. at page 376, 71 S.Ct. 783.

■ I conclude that the defendant Olive Nerney, under the circumstances here, was acting ás a quasi-judicial officer within the scope of the duties imposed on her, and the Civil Rights Act does not impose upon her any liability for damages for so acting.

■ Motion to dismiss is allowed; complaint dismissed against defendant Olive Nerney.[2] There is no just reason for delay and judgment may be entered as to defendant Nerney.

---

2. On the allegations of this complaint the plaintiff cannot recover under § 47(3) of the Civil Rights Act. That section provides a remedy for a denial of "equal protection of the law". Nothing in this case shows any denial of such a constitutional right. See Tinsley v. Anderson, 171 U.S. 101, 106, 18 S.Ct. 805, 43 L.Ed. 91; Mitchell v. Greenough, 9 Cir., 100 F.2d 184, 186; Gregoire v. Biddle, supra, 177 F.2d at page 581; Allen v. Corsano, D.C., 56 F.Supp. 169, 172.