Elmer **THOMPSON**, LeRoy Currington, Fred McCoy, Walter Neal, Cleo Smith, and others similarly situated, Plaintiffs,

v.

**W. A. BAKER**, Justice of the Peace, and R. L. Hoyle, Constable, in and for Pennington Township, Bradley County, Arkansas, Defendants.

Civ. A. No. 653.

United States District Court
W. D. Arkansas, El Dorado Division.
Aug. 19, 1955.

DuVal L. Purkins, Warren, Ark., for plaintiffs.

B. Ball, Warren, Ark., Charles S. Harley, Little Rock, Ark., for defendants.

JOHN E. MILLER, District Judge.

On December 10, 1954, plaintiffs filed their complaint against the defendants, W. A. Baker, a Justice of the Peace, and R. L. Hoyle, a Constable, alleging that said defendants had violated plaintiffs' civil rights. On January 26, 1955, the defendants filed a motion to dismiss plaintiffs' complaint on the ground that said complaint failed to state a claim

against defendants upon which relief could be granted. On the same date the Court entered an order postponing further consideration of the case until a determination by the United States Court of Appeals for the Eighth Circuit of the appeal in Civil Action No. 652, Tate v. Arnold, El Dorado Division, 223 F.2d 782. (The Tate case was essentially the same as the instant case insofar as the Justice of the Peace is concerned.)

On June 28 the Court of Appeals affirmed the decision of this Court in the Tate case, and on July 5 this Court advised the attorneys in the instant case of the disposition of the Tate case on appeal. The Court also requested the parties to file briefs in support of their respective contentions on the motion to dismiss. The briefs have been received, and the motion is now ready for final disposition.

The following portion of plaintiffs' complaint sufficiently states the essential elements of plaintiffs' claim:

"3.

"Defendants are W. A. Baker, a Justice of the Peace, and R. L. Hoyle, the Constable, who are now and during the times complained of, duly elected, qualified and acting officials and officers of Pennington Township, Bradley County, Arkansas, and, in which political subdivision of said State the City of Warren is located.

"4.

"On or about August 26, 1954, Russell Carmical, in some manner not known to plaintiffs advised W. A. Baker, Justice of the Peace, or R. L. Hoyle, Constable, he had an account for an alleged indebtedness of $80.25 owing him by Elmer Thompson; and, said Justice of the Peace, without requiring the filing of any evidence of the claim in writing or a verified itemized account or any interrogatories or any allegations or any bond as required by Arkansas Statutes, § 31–501 et seq., issued a Writ of Garnishment before Judgment directed to the Bradley Lumber Company of Arkansas, the employer of Elmer Thompson; and,

which Writ of Garnishment was served upon the Bradley Lumber Company of Arkansas by R. L. Hoyle, Constable, but no copy of said writ nor summons nor notice of any kind was served upon Elmer Thompson; and, the first, and the only notice Thompson had of the proceedings was when informed by his employer his wages had been garnished. To any claim of debt by Russell Carmical against him, Elmer Thompson, had a meritorious defense, and, after learning from his employer of the garnishment and the resulting withholding of wages due him, a hearing was requested, but it was postponed from time to time, until finally, and after five weeks, in order to secure his wages released by his employer Elmer Thompson paid under restraint the sum of $40.00 to Russell Carmical.

"8.

"As set out in paragraphs 4, 5, 6, 7 and 8 of this Complaint, not only the named plaintiffs, but divers and sundry other employees of the Bradley Lumber Company of Arkansas and the Southern Lumber Company, between January 1, 1954, and December 1, 1954, and for some years prior thereto, have suffered irreparable damage, harassment, invasion and deprivation of their rights in the wrongful and unlawful execution, issuance and service on the employers of approximately 650 claims of debt by various persons or businesses on such spurious writs of garnishment before judgment by W. A. Baker, Justice of the Peace, and, R. L. Hoyle, Constable, who, as such officers under color of Arkansas Statutes, § 31–501 et seq., have subjected or caused to be subjected these plaintiffs, all citizens of the United States, to the deprivation of their rights, privileges, and immunities without due process of law as secured by the Constitution and laws of the United States."

Plaintiffs pray an injunction against the defendants restraining them from issuing, serving, or executing writs of garnishment without complying with the Arkansas law. Plaintiffs also pray damages for the loss of their jobs, the al-

leged illegal deprivation of their wages, and attorney's fees. Plaintiffs also seek a declaratory judgment declaring the rights and legal relations of the parties. The question raised by defendants' motion is whether plaintiffs' complaint states a claim within the purview of the Civil Rights Act, and more particularly 42 U.S.C.A. § 1983, which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

(Plaintiffs' claim is based upon this Section and it is not contended that the defendants were engaged in a conspiracy.)

To come within the general language of this statute a claim must contain two essential elements: (1) the defendant must have acted under color of a statute, ordinance, regulation, custom, or usage of a State or Territory; and (2) the defendant must deprive plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.

With regard to the question of color of office, the rule is stated in Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495, as follows:

"It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."

It has also been held that, "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law". United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368. To the same effect see Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; Geach v. Moynahan, 7 Cir., 207 F.2d 714; Watkins v. Oaklawn Jockey Club, 8 Cir., 183 F.2d 440; McCollum v. Mayfield, D.C. Cal., 130 F.Supp. 112; State of Arkansas for Use and Benefit of Temple v. Central Surety & Insurance Corp. of Kansas City, Mo., D.C.Ark., 102 F.Supp. 444, 445.

It is clear that plaintiffs' complaint, when tested in the light of the foregoing authorities, sufficiently alleges that the defendants were acting under color of State law, and thus the next question is whether the complaint alleges a violation of the plaintiffs' constitutional rights. It is probable that the allegations of plaintiffs' complaint are sufficient to charge the defendant, W. A. Baker, Justice of the Peace, with a violation of their constitutional rights, in that he allegedly issued writs of garnishment against plaintiffs' employers without the filing of suits by plaintiffs' creditors against them and without any notice whatsoever to the plaintiffs. But for reasons hereinafter to be stated, plaintiffs' claim against the defendant Baker must be dismissed since he is protected by the judicial immunity rule.

However, there is a serious question as to whether plaintiffs' allegations in the complaint are sufficient to charge the defendant, R. L. Hoyle, Constable, with a violation of plaintiffs' civil rights. Insofar as the complaint discloses, the only action taken by the defendant, R. L. Hoyle, was in serving writs of garnishment against plaintiffs' employers. It is true, as plaintiffs contend, that the allegations of the complaint, if true, establish that the provisions of the Arkansas law relating to garnishment before judgment have not been followed. See Sec. 31–501 et seq., Ark.Stats.1947 Anno. But, the question is not whether

the State law has been followed; rather the question is whether the plaintiffs have been denied due process of law, as guaranteed by the Constitution of the United States, by reason of the action of the defendant Hoyle. Ortega v. Ragen, 7 Cir., 216 F.2d 561; Mueller v. Powell, 8 Cir., 203 F.2d 797.

■ Due process of law requires notice to all interested parties and an opportunity by them to be heard in any proceeding which is to be accorded finality. Mullane v. Central Hanover Bank and Trust Co., Trustee, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865. However, ordinarily the issuance of a writ of garnishment is merely a preliminary matter and has no degree of finality. In this connection, in Byrd v. Rector, 112 W.Va. 192, 163 S.E. 845, 81 A.L.R. 1213, the Court at page 1216 of 81 A.L.R. said:

"We think the answer to these propositions is that a defendant is not deprived of his property by reason of the levy of a copy of the attachment upon a person who is indebted to him or who has effects in his custody belonging to the defendant. The most that such procedure does is to deprive defendant of the possession of his property temporarily by establishing a lien thereon. Whether the defendant shall be deprived of such property must depend of course upon the plaintiff's subsequent ability to obtain a judgment in personam or in rem on his claim against the defendant. If, after having full opportunity to be heard in defense of such claim, a judgment is rendered thereon against the defendant or his property, there has been no lack of due process. In the meantime there has been no deprivation of property. The attachment, quasi rem in nature, has operated only to detain the property temporarily, to await final judgment on the merits of plaintiff's claim. No constitutional right is impaired.

McInnes v. McKay, 127 Me. 110, 141 A. 699."

It may be, therefore, that plaintiffs have not been denied due process of law, but it is unnecessary for the Court to pass upon that question at this time in view of the Court's conclusion regarding the primary question of whether the defendant Hoyle was protected by reason of serving writs fair upon their face.

This brings the Court to the principal issue raised by the motion, i. e., whether the common law immunity of a constable when serving a writ fair upon its face has been abrogated by the Civil Rights Act.

■ The general question presented is not a new one. Quite recently the courts have been called upon frequently to decide whether various immunities have been erased by the Civil Rights Act, or are still applicable. Most of the courts have taken a common-sense viewpoint of the Civil Rights Act, in the light of the purpose of its enactment, and have concluded that the Act did not abolish some of the well-established common law immunities. The courts have held the following immunities still applicable: (1) the immunity of members of a State Legislature for acts done within the sphere of legislative activity; Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; (2) the immunity of judges from civil liability for acts done by them in the exercise of their judicial functions, Tate v. Arnold, 8 Cir., 223 F.2d 782; Francis v. Crafts, 1 Cir., 203 F.2d 809, certiorari denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Horn v. Peck, D.C.Mich., 130 F.Supp. 536; Griffin v. Connally, D.C.Tex., 127 F. Supp. 203; Ginsburg v. Stern, D.C.Pa., 125 F.Supp. 596; Morgan v. Sylvester, D.C.N.Y., 125 F.Supp. 380; Souther v. Reid, D.C.Va., 101 F.Supp. 806; (3) the immunity of prosecuting or state attorneys as quasi-judicial officers, Jennings v. Nester, 7 Cir., 217 F.2d 153; Eaton v. Bibb, 7 Cir., 217 F.2d 446; Cawley v. Warren, 7 Cir., 216 F.2d 74;

(4) the immunity of a probation officer as a quasi-judicial officer, Dunn v. Estes, D.C.Mass., 117 F.Supp. 146; (5) the immunity of a prothonotary or clerk in following an order of the court, Ginsburg v. Stern, supra; (6) the immunity of a warden when executing a judicial order of commitment issued by a court of general jurisdiction and fair and regular upon its face, Francis v. Lyman, 1 Cir., 216 F.2d 583; (7) the immunity of a police officer in delivering a person to a reformatory pursuant to the court's order of commitment, Dunn v. Gazzola, 1 Cir., 216 F.2d 709.

In view of the decisions cited under (2), supra, it is apparent the motion to dismiss of the defendant, W. A. Baker, Justice of the Peace, must be granted since he is completely protected by the judicial immunity rule.

Apparently this is the first case in which the question of the immunity of sheriffs or constables has been raised in a case based on the Civil Rights Act, but the above cited decisions clearly chart the course for the Court in the instant case. With regard to the general construction of the Civil Rights Act, 42 U.S.C.A. § 1983, the following statement by the court in Francis v. Lyman, supra, at page 587 of 216 F.2d, is especially pertinent:

"In Cobb v. City of Malden, 1 Cir., 1953, 202 F.2d 701, 706, the following observation was made:

"'8 U.S.C.A. § 43 seems to say that every person in official position, whether executive, legislative, or judicial, who under color of state law subjects or causes to be subjected any person to the deprivation of any rights secured by the Constitution of the United States, shall be liable in damages to the person injured. The enactment in terms contains no recognition of possible defenses, by way of privilege, even where the defendants may have acted in good faith, in compliance with what they believed to be their official duty.

Reading the language of the Act in its broadest sweep, it would seem to make no difference that the conduct of the defendants might not have been tortious at common law; for the Act, if read literally, creates a new federal tort, where all that has to be proved is that the defendants as a result of the conduct under color of state law have in fact caused harm to the plaintiff by depriving him of rights, etc., secured by the Constitution of the United States.'

"When courts come to deal with a statute phrased in terms of such vague generality, they are faced with two possible alternatives: (1) They may give effect to the statute in its literal wording, and thus reach results so bizarre and startling that the legislative body would probably be shocked into the prompt passage of amendatory legislation. This seems to be the approach which the Third Circuit intended to take in its opinion in Picking v. Pennsylvania R. R. Co., 1945, 151 F.2d 240. (2) The courts may refuse to regard the statute as an isolated phenomenon, sticking out like a sore thumb if given a strict, literal application; and upon the contrary may conceive it to be their duty, in applying the statutory language, to fit the statute as harmoniously as may be into the familiar and generally accepted legal background, and to confine its application, within reason, to those situations which might possibly have had the approval of the Congress if it had specifically adverted to the particular cases, bearing in mind the basic purposes which gave rise to the legislation in the first place. We leave it to others to determine whether such judicial process may fairly be characterized as 'interpretation' of the intent of Congress, as disclosed in the statutory language, or whether it is something else. At any rate, it is a function which courts some-

times feel called upon to exercise and indeed which in many cases they are expected to exercise."

The Court is convinced that Congress had no intention of abolishing the common law immunities of sheriffs and constables. It has long been settled, both in Arkansas and other jurisdictions, that a writ or process issued by a Court having jurisdiction over the subject matter affords complete protection to a sheriff, constable, or other ministerial officer from liability for any proper or necessary act done in executing said writ or process, provided the writ or process is valid on its face. Matthews v. Densmore and Others, 109 U.S. 216, 3 S.Ct. 126, 27 L.Ed. 912; Erskine v. Hohnback, 14 Wall. 613, 81 U.S. 613, 20 L.Ed. 745; Carman v. Emerson, 8 Cir., 71 F. 264; State Life Insurance Co. v. Graue, 190 Ark. 460, 79 S.W.2d 268; Smith v. Fish, 182 Ark. 115, 30 S.W.2d 223; McIntosh v. Bullard, Earnhart & Magness, 95 Ark. 227, 129 S.W. 85; Campbell v. Hyde, 92 Ark. 128, 122 S.W. 99; Douglass v. Stahl, 71 Ark. 236, 72 S.W. 568; Trammell v. Town of Russellville, 34 Ark. 105; Huddleston v. Spear, 1848, 8 Ark. 406; Restatement of Judgments, Sec. 11, comment (f); Restatement of Torts, Secs. 122, 266, 277; 80 C.J.S., Sheriffs and Constables, § 122, p. 330; 57 C.J., Sheriffs and Constables, Sec. 525, and cases cited in footnote 98. The officer need not look beyond the writ or process, and he is not required or permitted to exercise his judgment as to whether the writ or process is valid. Moreover, it is the duty of the Court, rather than the officer, to see that proper notice is given to interested parties. Compare Dunn v. Gazzola, supra, at page 711 of 216 F.2d; Whittington v. Johnston, 5 Cir., 201 F.2d 810, 811.

The Court can perceive of no reason why the long-established immunity of a constable serving a writ should be in any degree inferior to the immunity of quasi-judicial officers, wardens, or prothonotaries, and the Court is thus of the opinion that such immunity was not affected by the Civil Rights Act.

There is no allegation in plaintiffs' complaint that the defendant Hoyle took any action other than to serve writs of garnishment on plaintiffs' employers. There is no allegation that Hoyle acted in bad faith or that the writs were not fair upon their face. Nor is it alleged that the Court issuing the writs of garnishment lacked jurisdiction over the subject matter. As a matter of fact the complaint clearly shows that the Justice of the Peace had jurisdiction over the subject matter, since the claims involved were each less than $100, Arkansas Constitution, Article 7, Sec. 40, and there is no question about the power of a Justice of the Peace to issue writs of garnishment before judgment. Sec. 31–501, Ark.Stats.1947 Anno. It is evident, then, that under the allegations of plaintiffs' complaint the defendant Hoyle's acts come within the scope of the common law immunity rule.

Therefore, since the Court has found that the constable's immunity is still applicable, the complaint fails to state a claim upon which relief can be granted as against the defendant Hoyle. It follows that defendants' motion to dismiss should be granted as to both of the defendants, and an order to that effect should be entered.