**Paul E. RHODES, Plaintiff,**

v.

**Norval HOUSTON et al., Defendants.**

Civ. 01322.

United States District Court
D. Nebraska.

Jan. 31, 1962.

Paul E. Rhodes, Howe, Neb., per se.

Robert A. Nelson, Sp. Asst. Atty. Gen. and Dwain L. Jones, Deputy Atty. Gen., for defendants.

H. B. Evnen and J. Arthur Curtiss, Lincoln, Neb., for Lumberman's Mutual Casualty Co.

James L. Macken, Bridgeport, Neb., for defendants James L. Macken and others.

VAN PELT, District Judge.

This is an action based upon the federal Civil Rights Act brought by Paul E. Rhodes as plaintiff against a number of Nebraska judicial and law enforcement officers, a North Platte, Nebraska law firm and the bonding companies of a number of the defendants.

Counsel for defendants have filed fifteen separate motions to dismiss the action, and after hearing and the submission of briefs the matter is now submitted for determination.

It is first necessary to summarize the allegations of the complaint, as amended pursuant to leave of court granted at the hearing. It begins by alleging jurisdiction under the provisions of 28 U.S.C.A. §§ 1331, 1343; 42 U.S.C.A. §§ 1983, 1986; Article 1, Section 9 of the United States Constitution and Amendments 14, 4, 6, 8, and 13 thereto. The court here notes that, while the complaint does not so state, it is apparent that 42 U.S.C.A. § 1985 is relied upon as the basis for the charge of conspiracy alleged in the second cause of action.

The complaint next proceeds to identify the defendants at the times material to the actions complained of: Norval Houston, Sheriff of Morrill County, Nebraska; Michael Linch, a Deputy Sheriff of Morrill County; Leo Knudtson, an officer of the Nebraska State Highway Patrol; Carl Sanders, a Colonel in the Nebraska State Highway Patrol; Maryland Casualty Co., the bonding Company for Houston and Linch; Virginia A. Schuetz, Clerk of the District Court of Morrill County; James L. Macken, County Attorney of Morrill County; Clarence A. H. Meyer, Attorney General of Nebraska; Cecil S. Brubaker, Assistant Attorney General; Rush Clarke, Special Assistant Attorney General; Beatty, Clarke, Morgan & Murphy, a partnership doing business in North Platte, Nebraska; Maurice Sigler, Warden of the Nebraska State Penitentiary; John Greenholtz, Deputy Warden of the penitentiary; Samuel W. Dickerson, Business Manager of the penitentiary; George Turner, Clerk of the Nebraska Supreme Court;

Richard Van Steenberg, District Judge for the District Court of Morrill County; Albert W. Crites, Acting District Judge of the Sixteenth Judicial District of Nebraska; Ted R. Fiedler, Acting District Judge for the Seventeenth Judicial District and Morrill County, Nebraska.

The essential allegations of the first cause of action recite that on or about November 21, 1960 plaintiff was tried in absentia for contempt of court in the District Court of Morrill County before the defendant Richard Van Steenberg, plaintiff neither being present nor represented by counsel; that he was sentenced to nine months hard labor in the Nebraska State Penitentiary and fined $2500.00; that at the conclusion of the trial defendant Van Steenberg entered an order overruling plaintiff's motion for a continuance, which recited that the State had introduced evidence to show "considerable physical activity on the part of the Defendant wholly inconsistent with the Defendant's claim of physical inability to stand trial; * * *." The order also overruled his motion to dismiss the information, and found the defendant guilty of contempt and imposed sentence; that on or about November 23, 1960 the defendant Schuetz, as Clerk of the District Court of Morrill County, acting under color of her office and without a mittimus or other direction of court, issued an order of commitment directed to the Sheriff of Morrill County which ordered him to execute the sentence; that under color of this "Order of Commitment" and at the direction of defendant Macken, defendant Houston and W. W. Schultz, Sheriff of Cheyenne County, arrested plaintiff and imprisoned him in the Cheyenne County jail; that on January 16, 1961 plaintiff obtained a writ of habeas corpus from John H. Kuns, the District Judge of Cheyenne County, which was issued and returned, and that Judge Kuns on January 16, 1961 made a journal entry indicating that the writ was issued on the "sole ground that his arrest by respondents was not by virture of any warrant or order of commitment;" that no error

proceeding, appeal, or other review was sought of such order, and said judgment is now final; that on January 23, 1961 plaintiff was arrested by defendants Houston, Linch and Knudtson under the order of defendant Macken and that such action was taken under color of the "commitment heretofore referred to;" that no warrant or valid commitment had ever been issued for the arrest and detention of plaintiff; that such action was taken by defendants Houston, Linch, Knudtson and Macken with knowledge and in disobedience of the writ of habeas corpus and with intent to deny plaintiff equal protection, and that the individual defendants "planned and agreed to commit all the acts alleged herein;" that plaintiff demanded counsel but was refused; that at the time of plaintiff's arrest and imprisonment there was no valid judgment or sentence against him; that the court entering the judgment was without jurisdiction to do so, and was without jurisdiction to pronounce sentence at hard labor to the penitentiary; that plaintiff never was given a jury trial; that plaintiff after his arrest demanded access to courts of Cheyenne County which was refused by defendants Houston, Linch, Knudtson and Macken; that he was then taken to the penitentiary; that the action taken by defendants Van Steenberg and Macken on November 21, 1960 was done knowing they had no jurisdiction to conduct a trial in absentia and to pass a sentence imposing infamous punishment, and for the purpose of denying plaintiff his federal civil rights; that plaintiff filed a notice in the District Court of Morrill County on November 2, 1960 setting forth, inter alia, that there was no jurisdiction over him; that on January 23, 1961 plaintiff was held in the penitentiary by and at the direction of defendants Sigler and Greenholtz. The complaint then proceeds to point out various details of plaintiff's life in the penitentiary, and includes allegations that he was being held as a convict, under the color of the commitment sentence, and was deprived of the privilege of practicing law, and that he was put in solitary confinement as a result of a disciplinary "hearing". Plaintiff also alleges that shortly after his arrest he made demand on defendant Turner for his release but Turner refused to direct such release; that at no time was plaintiff charged with the commission of a crime, afforded a jury trial, or represented by adequate counsel. Plaintiff then recites various ways in which he has been damaged. Plaintiff concludes his first cause of action with a prayer for damages against the defendants other than the Justices of the Supreme Court.

Plaintiff's second cause of action alleges that prior to the events set out the individual defendants, except the Justices of the Supreme Court, entered into a conspiracy with intent to deny plaintiff equal protection, and with the intent to injure him for enforcing or attempting to enforce his rights to equal protection.

The third cause of action prays for a restraining order against further imprisonment, and that portion of the complaint was denied by this court, after hearing, on September 22, 1961. It also prays for a "temporary and permanent injunction against the defendants" from violation of the plaintiff's civil right, rights, privileges and immunities."

*Plaintiff's First Cause of Action*

Plaintiff has divided his complaint into three causes of action. The first cause of action recites the events which this court has summarized above. It appears to be based primarily upon 42 U.S.C.A. § 1983 which provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The court will follow plaintiff's organization of the complaint and examine each of the so-called causes of action separately.[1] The first cause of action devotes one extended paragraph to identifying each of the named defendants and alleging that their actions were performed under the color of their various offices and authority. Other than this mention by way of identification no further reference is made as far as a number of the defendants are concerned, and no actions are set forth in which it is claimed they participated. As to these persons the first cause of action states no claim. Rule eight of the Federal Rules of Civil Procedure, 28 U.S.C.A. requires that the complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Obviously, when nothing whatsoever is alleged, plaintiff has not complied with that portion of the rule requiring him to show that he is entitled to relief. Despite the accepted liberality with which this rule is to be interpreted, a complaint must at the minimum reveal the basis upon which relief is sought. Mathews v. Kilroe, 170 F.Supp. 416 (S.D. N.Y.1959). This deficiency in the complaint means that the first cause of action states no claim against the following defendants: Sanders, Meyer, Brubaker, Clarke, the firm of Beatty, Clarke, Morgan & Murphy, Dickerson, Crites and Fiedler.

Plaintiff's first cause of action does, however, allege certain specific acts against the other defendants, except the members of the Nebraska Supreme Court who are specifically excluded in the prayer for relief. All the defendants have raised the defense of immunity in support of the motions to dismiss, and the argument is made that this doctrine precludes the maintenance of the action.[2]

The court will now proceed to examine the several motions to dismiss, dealing first with the first cause of action.

## IMMUNITY OF JUDGES

The only judge against whom any specific acts are alleged in the first cause of action is Richard M. Van Steenberg. Before determining the question of his immunity some observations must be made about the controlling legal principles. It is the view of this court that these principles are quite well settled, and no useful purpose would be served by the recitation of the extensive authorities. With that thought in mind the following rules may be stated:

1) As a general rule judges are immune from civil actions for damages for acts performed in the course of their official functions. This was the settled law of England and is similarly accepted in this country. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871); Meredith v. Van Oosterhout, 286 F.2d 216 (8th Cir., 1960) (cert. denied 365 U.S. 835, 81 S.Ct. 749, 5 L.Ed.2d 745 (1961)); Niklaus v. Simmons, 196 F.Supp. 691 (D.Neb. 1961).

2) The passage of the federal Civil Rights Act did not abrogate this traditional immunity. This is the overwhelming weight of authority, which has been followed by the Court of Appeals for this Circuit (Tate v. Arnold, 223 F.2d 782 (8th Cir., 1955) and this District (Niklaus v. Simmons, supra). For the numerous cases in accord see Judge Delehant's opinion in the Niklaus case, supra, 196 F.Supp. at page 713.

3) The recent opinion of the United States Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473,

---

1. The court adopts the complaint's terminology of "cause of action" solely for convenience and with full understanding that the Federal Rules require only that a "claim" and not a "cause of action" be stated.

2. The plea of immunity is also raised by the various bonding companies whose liability is, of course, contingent upon that of those bonded.

5 L.Ed.2d 492 (1961) does not, as plaintiff suggests, overturn or modify the doctrine of judicial immunity in a federal civil rights action. An examination of all federal cases which have cited Monroe v. Pape reveals that it has not yet been considered for its effect, if any, upon the well established rule of judicial immunity. This court, therefore, relies upon its own reading of that case, and concludes that it has no effect upon the doctrine and is not here in point.

4) An exception to the rule of judicial immunity exists which is founded on a distinction between *excess* of jurisdiction and the *absence* of all jurisdiction. Bradley v. Fisher, supra. Where there is jurisdiction over the subject matter and the person there is immunity, and even though a judge acts in *excess* of his jurisdiction the immunity remains. See Meredith v. Van Oosterhout, supra; Brictson v. Woodrough, 164 F.2d 107 (8th Cir., 1947), cert. denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772. But where an act is done in the clear *absence* of all jurisdiction and this is known to the judge there is no immunity.[3] Johnson v. MacCoy, 278 F.2d 37 (9th Cir., 1960); Kenney v. Fox, 232 F.2d 288 (6th Cir., 1956), cert. denied Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956).

These rules must be applied in testing plaintiff's complaint. As to defendant Van Steenberg it is to be noted that plaintiff, by alleging absence of jurisdiction to conduct a trial in absentia and to pass a sentence imposing infamous punishment, is attempting to invoke the aforementioned exception. This necessitates inquiry into what is necessary to acquire jurisdiction.

It is clear that Judge Van Steenberg had jurisdiction over the subject matter. Sec. 25–2121 R.R.S. (1943) confers jurisdiction upon courts of record to punish contempt. Moreover, that power exists as an incident to every judicial tribunal without the aid of statute. State ex rel. Beck v. Lush, 168 Neb. 367, 95 N.W.2d 695 (1959).

The question next arises whether there was jurisdiction over the person. Plaintiff argues that there was no such jurisdiction. Sec. 25–2122, R.R.S. (1943) provides that for contempt committed outside the presence of the court the party upon being brought before the court shall be notified of the accusation against him and given a reasonable opportunity to make his defense. Nebraska case law adds to these requirements the necessity that there be a charge made by information. See State ex rel. Beck v. Lush, supra. And it has been held that where no information is filed, no notice given, no opportunity afforded to make a defense, and no presence before the court a punishment for contempt is void. Muffly v. State, 129 Neb. 334, 261 N.W. 560 (1935). The requirements of due process of law require, as a minimum, that there be reasonable notice and a fair opportunity to be heard at some stage of the proceedings prior to final determination. Miller v. Miller, 153 Neb. 890, 46 N.W.2d 618 (1951).

From the foregoing it may be safely said that where the plaintiff has been proceeded against for contempt by an information, is given notice of the action and an opportunity to defend, and, in addition, is present before the court, there is jurisdiction over his person.

From plaintiff's complaint the following facts pertinent to the jurisdiction of the District Court of Morrill County appear. The "Order of Commitment" pleaded recites that plaintiff was proceeded against on an information pre-

---

3. It might be noted here that there is some authority which liberalizes the rule to the extent that it is not absence of *jurisdiction* which pierces immunity but absence of any *color* of jurisdiction. Ryan v. Scoggin, 245 F.2d 54 (10 Cir. 1957).

sented by Clarence S. Beck (the then Attorney General of this State) on July 29, 1960. The "Notice" which plaintiff filed on November 2, 1960 with the District Court of Morrill County shows that in earlier proceedings in the contempt matter plaintiff had been present before that court. The above-mentioned "Order of Commitment" indicates that after the filing of the information on July 29, 1960 no action was taken thereon against plaintiff until September 6, 1960.

It thus appears that at the time the action was first before the court over which defendant Van Steenberg presided on September 6, 1960, plaintiff had been properly proceeded against by information, a sufficient amount of time had elapsed prior to those dates to enable him to prepare, and plaintiff was in person present before the court. Under those circumstances it clearly appears that jurisdiction over the person of Paul Rhodes had vested in the court. Under that state of facts the jurisdiction of the court was fully attached, both as to subject matter and person. The ordinary rule where there is jurisdiction is that it continues until all issues, both of fact and of law, have been finally determined. Miller v. Miller, supra.

The issue precisely appears whether the action of defendant Van Steenberg in sentencing plaintiff on November 21, 1960 when plaintiff was not before the court nor represented by counsel was taken without jurisdiction over plaintiff's person. The order entered by Judge Van Steenberg at the conclusion of the trial on November 21, 1960 (which order is set out in the complaint) recites that the trial was re-commenced in plaintiff's absence only after plaintiff's motion for a continuance was overruled after "evidence was adduced by the State contending to show considerable physical activity on the part of the Defendant wholly inconsistent with the Defendant's claim of physical inability to stand trial."

The Nebraska law regarding the granting of a continuance has been recently restated in Kennedy v. State,

171 Neb. 160, 166, 105 N.W.2d 710, 716 (1960), wherein the court quoted from Svehla v. State, 168 Neb. 553, 96 N.W.2d 649 (1959) as follows:

"'An application for a continuance is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed unless it appears that the rights of the defendant were prejudiced thereby.'"

And where a denial of a continuance prevents the defendant from presenting his theory of defense it has been held an abuse of discretion. Dolen v. State, 148 Neb. 317, 27 N.W.2d 264 (1947). Further, a party to an action is not entitled to have his case continued as a matter of right. The question of whether or not a continuance shall be granted depends first upon a statutory showing. After the showing has been made, whether or not a continuance shall be allowed is discretionary. Cox v. State, 159 Neb. 811, 68 N.W.2d 497, 66 A.L.R.2d 293 (1955).

The above recitation of Nebraska law applicable to continuances makes it plain that the denial of a motion for a continuance is not such an action as would oust a court of jurisdiction. If its denial should, on appeal, be viewed as an abuse of discretion, it would, nonetheless, be action taken by the court within its jurisdiction.

A possible exception would exist if a court would overrule a motion for continuance and proceed to trial without due notice and opportunity to be present and defend having been afforded the one standing trial. In those circumstances, the rule that jurisdiction once attached continues until the ultimate disposition of the cause would not apply, since clearly it would violate the requirements of due process, and would be void in Nebraska upon the authority of the Muffly case, supra. There would not be jurisdiction over the person.

The plaintiff's complaint, as noted above, sets out the November 21, 1960 order of Judge Van Steenberg.

That order recites that plaintiff had been "duly notified of this hearing." It thus appears, from facts which plaintiff has included in his complaint, that plaintiff had notice that the resumption of his contempt trial was scheduled for November 21, 1960. The jurisdiction over plaintiff's person which had previously attached by virtue of the filing of the information, his presence before the court and the opportunity granted him to defend was not removed, but continued and upon the date of November 21, 1960 the court had jurisdiction over plaintiff's person. Under such circumstances the denial of a continuance was purely a matter of discretion the exercise of which had no effect upon the jurisdiction of the court. It is clear that defendant Van Steenberg had jurisdiction over the subject matter and the person of plaintiff at the time he sentenced plaintiff for contempt, and under the general rules above set out is clearly immune from the instant suit against him.

In addition to the jurisdictional facts which this court has found are recited in the complaint, the court has examined certified copies of certain documents filed in this suit, which are copies from the file of the case of State of Nebraska v. Paul E. Rhodes in the District Court of Morrill County, the contempt action which is the basis for plaintiff's present suit. These documents show that, in fact, plaintiff did have ample notice and opportunity to defend.

1) On October 31, 1960 Judge Van Steenberg signed an order continuing the matter until November 21, 1960 at 10:00 a. m. This order was recorded as a Journal Entry on November 14, 1960.

2) On November 15, 1960 one H. Snyder, a Deputy Sheriff of Denver, Colorado, served upon Mr. Rhodes in Denver a "Notice" signed by James L. Macken, County Attorney, which recited:

"You are hereby notified that the court has set a hearing for all of the matters pending in the above case for November 21, 1960, at 10:00 o'clock A.M.

"You are further notified that in the event the court should overrule a further motion for continuance on your part, the State will ask the court to proceed to complete the trial notwithstanding your absence."

3) On November 21, 1960 Mr. Rhodes filed a motion requesting a continuance.

This court has also taken judicial notice of the records filed in the Supreme Court of Nebraska in connection with plaintiff's proceedings in error from the contempt conviction. These documents further establish the following points pertinent to this court's finding that defendant Van Steenberg had jurisdiction over the person of plaintiff.

1) Plaintiff was proceeded against on an information for contempt of court, signed by Clarence S. Beck as Attorney General of Nebraska.

2) That on August 1, 1960, pursuant to an order of attachment for the body of plaintiff, plaintiff was so attached and produced before the court.

3) That on August 1, 1960, in open court, plaintiff was notified of the accusation against him and given a certified copy thereof, and was given until September 1, 1960 to answer the information and make his defense.

Thus, by way of summary, it clearly appears from the face of plaintiff's complaint and from the documents referred to which are a matter of public record, that there was jurisdiction over the plaintiff which means that plaintiff's first cause of action states no claim against defendant Van Steenberg for the reason that the defendant is immune.

The court takes this opportunity to comment upon its action in going outside the record to examine the documents on file before the Supreme Court of Nebraska. The prevailing rule

concerning judicial notice in such matters is stated in Morse v. Lewis, 54 F.2d 1027, 1029 (4th Cir., 1932):

"The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness. * * * But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the court, in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation."

The court believes that both the dictates of logic and the demands of justice require it to establish by its own inspection that plaintiff herein had notice. There has been set for hearing in a matter of days arguments upon that portion of plaintiff's complaint seeking a temporary and permanent injunction against the several defendants. Plaintiff has subpoenaed a great number of witnesses for this hearing, including many inmates of the state penitentiary, where he is now imprisoned. To hold that plaintiff has stated a claim against Judge Van Steenberg simply because it does not conclusively appear from plaintiff's complaint that he had notice of the November 21, 1960 hearing, when the fact that he did have notice plainly appears in documents filed in the case from which this action arose, would be to impose a heavy burden upon all those defendants and witnesses whose presence would otherwise be required at the hearing. Additionally, the court believes that under these circumstances, the rule that in a federal habeas corpus action the court may judicially notice the transcript of trial proceedings and briefs which had been before the Nebraska Supreme Court is flexible enough to allow the same procedure in a case such as this. See Wilson v. Sigler, 285 F.2d 372 (8th Cir., 1961), Starkweather v. Greenholtz, 267 F.2d 858 (8th Cir., 1959), cert. denied 360 U.S. 921, 79 S.Ct. 1442, 3 L.Ed.2d 1537 (1959).

The court has already indicated that no claim has been stated against defendants Crites and Fiedler for the reason that no acts have been charged against them. It should also be repeated here that the complaint alleges that these defendants, both district judges of the State of Nebraska, were acting "under the color of that office and authority." It is clear that by the use of such language plaintiff is attempting to bring these defendants within the ambit of 42 U.S.C.A. § 1983, but as has been discussed, that section does not abrogate the traditional immunity of judges. There is no allegation that either acted without jurisdiction. Under these circumstances the first cause of action must also be dismissed as to these defendants on the additional ground that they are immune from civil actions for damages for acts performed in the course of their official functions, since it appears from the complaint that they were so acting. See the authorities cited above on the proposition of judicial immunity.

## IMMUNITY OF PROSECUTING ATTORNEYS

The court has indicated that the first cause of action states no claim against the defendants Meyer, Brubaker and Clarke, the Attorney General, Assistant Attorney General, and Special Assistant Attorney General respectively. But in addition to the reason set forth, it also appears that these defendants are immune, since the complaint on its face sets forth that these defendants were acting in the capacity and under the authority of their various offices.

The law is clear that state's attorneys and prosecuting attorneys are immune. A number of cases speak of prosecuting attorneys as "quasi-judicial" officers who enjoy the same immunity from a civil action for damages as that which protects a judge acting within his

jurisdiction over the parties and the subject matter of the litigation. See, e. g. Kenney v. Fox, 232 F.2d 288 (6th Cir., 1956), cert. denied 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (affirming a dismissal of an action under 42 U.S.C.A. § 1983 against a prosecuting attorney.) And it has been held that where the allegations of the complaint show that the acts charged against an assistant state's attorney were performed in the discharge of his official function and duties, then "under the law as recognized in a long line of cases, such officials are immune to prosecution" of a civil rights suit. Peckham v. Scanlon, 241 F.2d 761, 763 (7th Cir., 1957). Further authority for the proposition that alleging that acts occurred when state's attorneys were acting in their official capacity means that no claim is stated is the case of Jennings v. Nester, 217 F.2d 153 (7th Cir., 1954). In Stift v. Lynch, 267 F.2d 237, 239 (7th Cir., 1959) the court approved the dismissal of a civil rights action against the State's Attorney and the Assistant State's Attorney, saying that "prosecuting officials are not to be amerced by actions under the Federal Civil Rights Act for their actions in connection with official prosecutions even though it is alleged that such acts were done maliciously." The Court of Appeals for this Circuit has recognized the existence of immunity for such officials. Byrd v. Sexton, 277 F.2d 418, 431 (8th Cir., 1960), cert. denied 364 U.S. 818, 81 S.Ct. 49, 5 L.Ed.2d 48 (1960).

The above sampling of authority indicates that these defendants are immune from the instant action. Rationale for the rule can be found in the Niklaus opinion, supra. It is what Judge Delehant therein refers to as a "practical implementation of the judicial immunity." 196 F.Supp. at p. 714.

It should also be noted that the above rule applies also to defendant Macken, the County Attorney of Morrill County, and he is likewise immune.

### IMMUNITY OF CLERKS OF COURTS

Two of the defendants fall into the classification of clerks of courts. Defendant Turner is Clerk of the Nebraska Supreme Court. Defendant Schuetz is Clerk of the District Court for Morrill County.

■ Before discussing immunity of these defendants the court will first examine the specific allegations made against defendant Turner. Plaintiff alleges:

"Shortly after his arrest plaintiff made demand upon the defendant George Turner for his release in accordance with the provision of the Statutes of the State of Nebraska; the defendant, George Turner then and there refused to direct such release."

The court holds that this does not state a claim against defendant Turner. At the hearing plaintiff, in response to a question by the court, cited Sec. 29–2311 R.R.S.1943 as the statute which authorized Mr. Turner to direct his release. That section provides:

"When the defendant has been committed to the penitentiary, and the judgment by virtue of which the commitment is made shall be reversed on a writ of error, by which reversal the defendant shall be entitled to his discharge or to a new trial, the clerk of the Supreme Court shall, under the seal of the court, forthwith certify the same to the warden of the penitentiary."

Obviously, that section has no application to the facts upon which plaintiff is suing. Since it does not appear that defendant Turner had any authority to order plaintiff's release, his failure to do so cannot be made actionable, and the first cause of action states no claim against him.

■ Moreover, the principle of immunity is also available to protect defendants Turner and Schuetz from this suit. Immunity extends to clerks of court. Ginsberg v. Stern, 125 F.Supp. 596 (W.D.Pa.1954), aff'd 225 F.2d 245 (3 Cir.); Niklaus v. Simmons, 196 F. Supp. 691 (D.Neb.1961) (which expressly holds the same defendant Turner to

be immune). As to defendant Schuetz it is to be noted that the allegation is that she was acting "under the color of that office and authority." The "Order of Commitment" signed by her and reproduced in the complaint clearly shows that her actions were taken in her official capacity as clerk, in furtherance of her duties, and as an implementation of a judgment of the court. The rule of immunity applies to bar this action against her. The first cause of action states no claim against either Schuetz or Turner.

## IMMUNITY OF WARDENS AND PENAL INSTITUTION EMPLOYEES

The first cause of action alleges acts against defendants Sigler and Greenholtz. No acts having been alleged against Dickerson, the court has already indicated that no claim has been stated against him. As to Sigler and Greenholtz, warden and deputy warden of the Nebraska State Penitentiary, plaintiff charges that they held him captive. All the other statements pertain to his life in the penitentiary, and the court sees no useful purpose in setting them out. Thus, two separate elements appear: (1) detention, and (2) treatment.

### (1) Detention

The rule is clear that no action may be based on the Civil Rights Act for detention such as is alleged here. The following extended quotation adequately summarizes this principle.

"We think the failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law. Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law *at that time* required him to perform.

"In Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583, at pages 588–589, Judge Magruder states: 'The *privilege* of the jailor to impose the confinement * * * is, we think, quite as time honored in the Anglo-American common law as is the *immunity* of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities,' citing cases. [Emphasis supplied.]

"In Kenney v. Fox, 6 Cir., 1956, 232 F.2d 288, at page 290, the court stated with reference to two doctors, ' * * * the institutional doctors should not be expected or even permitted to go behind a court order of commitment of a person to a state mental hospital where, on its face, the order appears to be valid.' " Hoffman v. Halden, 268 F.2d 280, 300, (9th Cir., 1959).

### (2) Treatment

The facts set out in the complaint surrounding the treatment which plaintiff received indicate that it was nothing other than the enforcement of prison rules and regulations. A claim that enforcement of prison rules and regulations deprives one of constitutional rights is not one upon which relief can be granted. In Eaton v. Bibb, 217 F.2d 446 (7th Cir., 1955), cert. denied 350 U.S. 915, 76 S.Ct. 199, 100 L.Ed. 802 (1955), the court in dismissing a complaint for failure to state a claim under the Federal Civil Rights Act said:

"[F]ederal courts do not have the power to control or regulate the ordinary internal management and discipline of prisons operated by the states. We stated [in previous cases] that the disapproval by a prisoner of certain prison rules and regulations was no basis for him to come into Federal Court even though he claims that the restrictions placed upon his activities are in violation of his constitutional rights. Quoting from Stroud v. Swope, 9 Cir., 187 F.2d 850, 851, 852, we said: 'We think that it is well settled that it is not the function of the courts to superintend the treatment

and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined.'" 217 F.2d at p. 448.

Accord: Blythe v. Ellis, 194 F.Supp. 139 (S.D.Tex.1961).

## IMMUNITY OF LAW ENFORCE-MENT OFFICERS

■ Defendants Sanders, Houston, Linch and Knudtson fall in this category. It has already been noted that the first cause of action states no claim against Sanders. When dealing with defendants in this group the immunity is not as near-absolute as it is where judges are involved. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) is an instance where a cause of action was stated against such persons. Nonetheless, authorities performing orders issuing from a court are provided immunity when they do nothing other than perform such orders. Ravenscroft v. Casey, 139 F.2d 776 (2nd Cir., 1944), cert. denied 323 U.S. 745, 65 S.Ct. 63, 89 L.Ed. 596 (1944). See also, Thompson v. Baker, 133 F.Supp. 247 (W.D.Ark.1955); Allen v. Groat, 283 F.2d 692 (6th Cir., 1960). In Dunn v. Gazzola, 216 F.2d 709 (1st Cir., 1954) the action of the district court in dismissing a Civil Rights Action against a police sergeant who delivered the plaintiff to a reformatory pursuant to a court order of commitment was affirmed. The last cited case is reported below as Dunn v. Estes, 117 F.Supp. 146 (D.Mass. 1953), and the following pertinent language is there found:

> "[I]t is crystal clear that certain public officials, at least those exercising quasi-judicial functions, acting within the sphere of their duties enjoy the same absolute privilege as judges and the reason for the policy is, as Judge Hand states in Gregoire v. Biddle, 2 Cir., 177 F.2d 579, 580, 581, to permit public officers to act unflinchingly in the discharge of their duties and without a constant dread of retaliation." 117 F.Supp. at p. 148.

As it has been rather quaintly stated, the contrary principle "would indeed be pregnant with the greatest mischiefs." Kendall v. Stokes, 3 How. 87, 44 U.S. 87, 11 L.Ed. 506 (1845).

■ All the actions of defendants Houston, Linch and Knudtson, and defendant Macken may be added, were allegedly performed on the authority of the commitment issued by defendant Schuetz. On the strength of the authority set out above, it appears that these defendants are immune from the claim which plaintiff attempts to assert in his first cause of action.

### Summary of Plaintiff's First Cause of Action

No claim is stated against any of the defendants. It follows that no claim has been stated against the various bonding companies. As noted, the justices of the Nebraska Supreme Court were not included.

### Plaintiff's Second Cause of Action

Having determined that the first cause of action does not state a claim against any of the defendants, the court now turns to examine plaintiff's second cause of action. The gist of the allegation is that the individual defendants, prior to the events recited in the first cause of action, entered into a conspiracy to impede justice with the intent to deny plaintiff equal protection. This claim must be considered as being based on 42 U.S.C.A. § 1985(2) which gives a right to sue where

> "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

To the above is added the requirement that something in furtherance of the conspiracy be done which damages the

person. 42 U.S.C.A. § 1985(3) sets this out as follows:

> "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

It is apparent from the face of the statute that it is not the conspiracy per se which is actionable, but only acts taken to further the conspiracy which injure the complainant.

The elements necessary to state a cause of action under this section are stated in Hoffman v. Halden, 268 F.2d 280, 292 (9th Cir., 1959).

> "(1) that defendants conspired,
>
> "(2) that the purpose of the conspiracy was to impede or hinder, or obstruct or defeat the due course of justice in a state or territory;
>
> "(3) with the purposeful intent to deny to a citizen the equal protection of the law [the requirement that the discrimination be purposeful is added by Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944)], and
>
> "(4) that the acts complained of were done under color of state law or authority [the requirement that the acts be done under color of state law or authority stems from Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951)]
>
> "(5) (the requirement of § 1985 (3), Title 42 U.S.C.A.) that by acts done in furtherance of the conspiracy the plaintiff was injured in his person or property *or* was deprived of having and exercising a right or privilege of a citizen of the United States."

The first four of the above elements are clearly present in plaintiff's second cause of action. The remaining element remains to be discussed. As noted earlier, the statute does not make the conspiracy itself actionable. An overt act is necessary. This is in accord with a well-recognized principle of law.

> "[I]t is clear that the mere agreement to do a wrongful act can never alone amount to a tort, although it may be a crime; and that some act must be committed by one of the parties in pursuance of the agreement, which is itself a tort."
>
> Prosser, Law of Torts, 2d Ed. (1955) p. 235

The Hoffman case, supra, states the rule as follows and supports it with a number of citations which the court will not repeat here.

> "In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy." 268 F.2d at p. 295.

This rule of law is quite important on the question whether plaintiff's second cause of action states a claim, since without overt acts no right of action is granted by Section 1985, and without allegations of the commission of acts in furtherance of the conspiracy no claim is stated. Hoffman v. Halden, supra; Progress Development Corp. v. Mitchell, 185 F.Supp. 681 (N.D.Ill.1960). Brictson v. Woodrough, 164 F.2d 107, 109 (8th Cir., 1947), cert. denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772, sets out the rule as follows:

> "The gist of a civil action for conspiracy is the act or acts committed in pursuance thereof, the damage, not the conspiracy or the combination. Unless injury has resulted

from something done in furtherance of the conspiracy by one or more of the conspirators, a civil action will not lie."

■ Plaintiff's second cause of action incorporates paragraphs one to eleven of his first cause of action. Paragraphs one to eleven are those which set out the acts of which plaintiff complains, and are in substance those which this court summarized at the beginning of this memorandum. The first cause of action does not allege any acts whatsoever against a number of the defendants. That point has been discussed earlier. Only their names and positions are listed, and the statement that they were acting under the color and authority of their respective offices. Plaintiff's incorporation of paragraphs one to eleven in his second cause of action does not, therefore, allege any acts against those defendants. The second cause of action of the complaint stands as a document alleging a conspiracy, but the failure to allege any overt acts against some of the defendants means that, as to those defendants, plaintiff has failed to state a claim. See the authorities cited above. As a consequence, no claim is stated under plaintiff's second cause of action against defendants Sanders, Meyer, Brubaker, Clarke, the firm of Beatty, Clarke, Morgan & Murphy, Dickerson, Crites and Fiedler.

■ However, by the incorporation of paragraphs one to eleven into the second cause of action, plaintiff succeeds in alleging the commission of overt acts in furtherance of the conspiracy on the part of the remaining defendants except the Supreme Court. But, as this memorandum has previously indicated, the actions set out were all cloaked with immunity. It is these same actions that are essential to the conspiracy charge, and where the action taken is protected by the immunity doctrine that immunity is not lost simply by claiming that it was done in furtherance of a conspiracy.

The idea involved can be seen from the Hoffman case, which states:

"If the official in complying with an order for a plaintiff's commitment, and in performing his discretionary acts is immune regardless of his motive, then a conspiratorial motive or intent should not make him liable." 268 F.2d at p. 301.

In that case the superintendent of a state mental hospital had authority to release plaintiff when he thought proper and for the exercise of this discretionary authority he was immune from liability under the Civil Rights Act. The court held that such immunity was not lost by allegedly conspiring to detain plaintiff. The rule is clear that where an official is protected by the doctrine of immunity, such immunity likewise protects him from an action under 42 U.S.C.A. § 1985.

The following cases are illustrative of the stated rule:

(1) *Judges* Gay v. Heller, 252 F.2d 313 (5th Cir., 1958); Peckham v. Scanlon, 241 F.2d 761 (7th Cir., 1957); United States ex rel. Peters v. Carson, 126 F.Supp. 137 (W.D.Pa.1954).

(2) *Prosecuting Attorneys* Stift v. Lynch, 267 F.2d 237 (7th Cir., 1959); Jennings v. Nestor, 217 F.2d 153 (7th Cir., 1954); Cawley v. Warren, 216 F.2d 74 (7th Cir., 1954).

(3) *Clerks of Courts* Ginsburg v. Stern, 125 F.Supp. 596 (W.D.Pa.1954) aff'd 225 F.2d 245 (3 Cir.); See also Allen v. Biggs, 62 F.Supp. 229 (E.D.Pa. 1945).

(4) *Wardens and Penal Employees* Hoffman v. Halden, 268 F.2d 280 (9th Cir., 1959).

(5) *Law Enforcement Officers* Dunn v. Gazzola, 216 F.2d 709 (1st Cir., 1954).

■ In summary, the second cause of action must be dismissed since the immunity of the defendants which the court, in examining the first cause of action, has found to exist likewise precludes action against them under the second cause of action, and for the further reason that, as to some of the defendants, no overt acts are alleged against them.

*Plaintiff's Third Cause of Action*

Plaintiff here alleges that the defendants, including the Justices of the Nebraska Supreme Court, acting under color and authority of the respective offices of the defendants, "now threaten * * * and to plaintiff's information and belief, will, unless restrained and enjoined, commit or suffer to be committed further violation of the civil rights, privileges and immunities of the plaintiff, by causing his apprehension and incarceration in the Nebraska State Penitentiary at hard labor." Plaintiff then prays for a temporary restraining order against his further imprisonment, and that matter was disposed of at the September 22, 1961 hearing. Plaintiff also prays for a temporary and permanent injunction against the defendants from further "violation of the plaintiff's civil right, rights, privileges and immunities * * *."

It is a general rule that federal courts will rarely intervene with the conduct of State officials carrying out their duties under state law. United States v. Radio Station WENR, 209 F.2d 105 (7th Cir., 1953). It is only in case of manifest oppression that a federal court is justified in entering an injunction against state officials acting under color of office. Progress Development Corp. v. Mitchell, 182 F.Supp. 681, (N.D.Ill.1960), reversed in part on other grounds 286 F.2d 222 (7th Cir., 1961). The Progress Development case, supra, also says with some present pertinence:

> "The mere intention to take some action at some time in the future, which might or might not occur, and which if it does occur might present a situation coming under the Civil Rights Act, does not present any justiciable question under the Civil Rights Act at this time." 182 F. Supp. at p. 713.

The court having held that plaintiff is not entitled to maintain his action cannot conclude that it should exercise its discretion to enjoin state officials from future violations of plaintiff's civil rights. The preservation of the delicate federal-state relation counsels against such a move, as do the authorities cited above. Accordingly, the third cause of action will be dismissed.

An order has previously been entered.